UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIS JOHNSON, | No. 2:21-cv-0828 KJN P |
| Plaintiff, | |
| v. | |
| KATHLEEN ALLISON, et al., | ORDER AND FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

I. Introduction

    Plaintiff is a state prisoner, who proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on the amended complaint against defendants N. Largoza, M.D., Chief Physician and Surgeon, and S. Gates, Chief, Health Care correspondence and Appeals Branch Policy and Risk Management Services. Presently pending is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the undersigned recommends that defendants' motion be partially granted, and this action be dismissed.

II. The Amended Complaint

    Plaintiff alleges the following: His Eighth Amendment right to be free from cruel and unusual punishment was violated by defendants' failure to protect plaintiff from COVID-19. Plaintiff is medically high risk, based on lichen simplex chronicus, hypertension,

gastroesophageal reflux, and chronic obstructive pulmonary disease, and he is over the age of 50. He alleges he is not being adequately protected from COVID-19 due to inadequate sanitation, inadequate isolation from symptomatic people, inadequate quarantine of exposed people, inadequate exclusion of symptomatic or exposed staff, and inadequate testing and reporting. Plaintiff was ordered to move to building 9 (in cell living) due to his high risk status, yet contracted COVID-19 a few days later; another high risk inmate died as a result of moving into that same building.  In response to plaintiff's administrative appeal seeking early release from incarceration, defendant Dr. Largoza responded "no intervention," adding that inmates with a COVID-19 risk score of 4 or higher would undergo additional custodial screening to determine whether eligible for expedited release.  Despite having a rating of 7, plaintiff has not yet been notified of possible release.  He claims that defendant Gates also responded "no intervention."[1] (ECF No. 18 at 4.)

Plaintiff contends that his continued confinement poses a dire health risk and an unreasonable risk of continuous pain and harm, and seeks declaratory relief, unidentified extraordinary relief, and punitive damages.

III. Motion to Dismiss

A. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

---

[1] Plaintiff refers to an Exhibit A, but no exhibit was provided with his amended complaint. (ECF No. 18, *passim*.)  Defendants Allison and Gates were dismissed at plaintiff's request.  (ECF Nos. 20, 21.)

2

cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

B.  The Civil Rights Act & The Eighth Amendment

To prevail on a claim under § 1983, a plaintiff must demonstrate:  (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 104 (1976.) According to Farmer v. Brennan, 511 U.S. 825, 947 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care does not conflict with competing administrative concerns." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Specifically, a determination of "deliberate indifference" involves two elements:  (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. McGuckin, 974 F.2d at 1059.

First, a serious medical need exits if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

Second, the nature of a defendant's response must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to

respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Id.  Second, there must be resulting harm from the defendant's activities.  (Id.)  The needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

       C. The Parties' Positions

          1. Defendants' Motion

Defendants contend that plaintiff improperly seeks release from prison, an unavailable remedy in a civil rights action under § 1983.  But even construing plaintiff's amended complaint as seeking money damages rather than release, defendants argue that the only conduct plaintiff accuses defendants of is denying the administrative grievances in which he requested early release from prison, which fails to state a cognizable Eighth Amendment claim.  Generally, prison officials' denial of a grievance fails to violate any constitutional right. (ECF No. 32-1 at 12.)  In addition, plaintiff has no constitutional right "to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."  (ECF No. 32-1 at 12, citing Swarthout v. Cooke, 562 U.S. 216, 220 (2011).)  Defendants contend the Eighth Amendment is not violated simply because he is found unsuitable for early release on parole. (ECF No. 32-1 at 12, citing Cavalier v. Newsom, 2020 WL 7318118, at *10 n.10 (S.D. Cal. Dec. 11, 2020).)

Otherwise, defendants maintain that the pleading fails to establish that anyone subjected plaintiff to an unreasonable risk of harm as required to support an Eighth Amendment claim. Defendants contend that plaintiff's generalized allegations of inadequate sanitation, inadequate isolation of symptomatic people, inadequate quarantine of exposed people, inadequate exclusion of symptomatic or exposed staff and inadequate testing and reporting fails to describe the conditions, isolation, quarantine, exclusion, testing or reporting being conducted, or how they could be improved to make them adequate.  Defendants argue that plaintiff fails to set forth specific facts linking one of those factors or any other action taken by prison staff to plaintiff contracting the virus.  Indeed, defendants contend that plaintiff's claim that he was moved to a different housing unit because he is high risk demonstrates steps were taken to protect inmates,

5

including high risk inmates such as plaintiff. The fact that plaintiff contracted the virus a few days later, standing alone, fails to demonstrate he was deprived of the "minimal civilized measure of life's necessities." (ECF No. 32-1 at 13, citing Farmer, 511 U.S. at 834.)

Thus, plaintiff fails to demonstrate that any named defendant had control over plaintiff's conditions of confinement or personally acted -- or failed to act -- in a manner that put plaintiff's health at risk. Further, defendants argue that plaintiff fails to allege facts demonstrating that either defendant was objectively aware of plaintiff's health condition or risks he allegedly faced, or show that either defendant had the ability to correct alleged issues or mitigate any dangers plaintiff faced. (ECF No. 32-1 at 14.)

### Punitive Damages

Because punitive damages may be assessed in a section 1983 action only when a defendant acts with an evil motive or intent or a reckless or callous indifference to plaintiff's protected rights, none of which plaintiff alleges, defendants contend plaintiff's claim for punitive damages should be dismissed. (ECF No. 32-1 at 19.)

### Qualified Immunity

Because plaintiff's allegations fail to establish both the objective and subjective elements of an Eighth Amendment claim, defendants argue they are entitled to qualified immunity. In addition, defendants contend that there was no clearly established law requiring that plaintiff be released early from his valid incarceration, and plaintiff did not have a clearly established right to be free from an abstract increase in exposure to COVID-19. Rather, defendants contend that "several federal courts have considered arguments like those [here] and have universally found that prisoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." (ECF No. 32-1 at 16-17, citing VanDyke v. La. Dep't of Corr., No. CV 20-0448, 2020 WL 1869016, at *2 (W.D. La. Apr. 13, 2020) (collecting cases).)

Further, defendants argue that there is no clearly established law that shows that some abstract increase in the risk of exposure to COVID-19 in prison would violate the Eighth Amendment. (ECF No. 32-1 at 17.) Defendants compared how courts granted qualified immunity to defendants in cases challenging inmate housing where inmates who were at a higher

6

risk of developing complications from Valley Fever, and did catch Valley Fever, because the inmates failed to show "that 'every reasonable official would [have understood] that exposing them to a heightened risk of valley fever violated the eighth Amendment.'"  Hines v. Youseff, 914 F.3d 1218 (9th Cir. 2019).

Defendants contend that developing case law "suggests that a heightened risk to COVID-19 in the correctional setting is not inherently unconstitutional," citing Plata v. Newsom, 445 F. Supp. 3d 557 (N.D. Cal. 2020) (class action addressing the provision of medical care in California state prisons).  In Plata, the court recited myriad steps prison officials had taken to reduce the risk, including relocating inmates within and between facilities, committed to physical distancing directed by the receiver, and taken steps to reduce the prison population, and found that the prisoner plaintiffs failed to show that the state's response to COVID-19 was "constitutionally deficient."  Id. at 571.  Defendants also cited other out-of-circuit cases supporting defendants' position that a heightened risk of COVID-19 in the prison setting is not inherently unconstitutional, even in some cases where the virus could not be contained.  (ECF No. 32-1 at 18 (citing cases from Sixth and Eleventh Circuits).)  In light of all the above authorities, defendants argue that every reasonable prison official was not put on notice that defendants' conduct would violate the Eighth Amendment, and therefore defendants are entitled to qualified immunity.

### No Leave to Amend

Finally, defendants argue that plaintiff should not be granted leave to amend; such amendment would be futile because plaintiff may not obtain release from prison through a § 1983 action; plaintiff cannot state a claim against defendants based on their denial of his requests for release through the prison's administrative grievance system; and defendants are entitled to qualified immunity.

#### 2. Plaintiff's Opposition

Plaintiff counters that defendants are not entitled to qualified immunity, arguing both that a ruling on qualified immunity is premature, but acknowledging that it should be decided as early as possible.  (ECF No. 35 at 1-2.)  He claims Governor Newsom declared a state of emergency due to the pandemic on March 4, 2020, and the federal government declared a national

emergency on March 13, 2020. Within the background summary of his opposition, plaintiff appears to seek judicial notice of, and allegedly "incorporates by reference," two declarations by attorney Barry K. Newman and investigator Brian Evans. (ECF No. 35 at 3.) Both declarations appear to have been prepared for filing in a different case, In re Curtis Lee Morrison, On Habeas Corpus, No. M00132 (Superior Court, County of Solano). (ECF No. 35 at 10-14.) Plaintiff claims each affiant has agreed to testify for plaintiff in this action. (ECF No. 35 at 3.) Also, plaintiff points to findings by the Center for Disease Control and Prevention identifying those factors placing certain people at higher risk of getting very sick from COVD-19. Plaintiff contends he was housed with inmates who had confirmed cases of COVID-19, rather than being housed with inmates only suspected of having been exposed to COVID-19, in violation of the guidelines established by the Center for Disease Control and Prevention. He claims CDCR medical officials demonstrated deliberate indifference to plaintiff's health and safety by subjecting him to such conditions and failing to take reasonable steps to abate them. (ECF No. 35 at 4.) He argues that reasonable physical safety is fundamental to the Eighth Amendment, and the Supreme Court recognizes that the risk of contracting serious contagious diseases may constitute an unsafe, life threatening condition that threatens reasonable safety. (ECF No. 35 at 5, citing Helling v. McKinney, 509 U.S. 25, 33-34 (1993); Hutto v. Finney, 437 U.S. 678, 682-85 (recognizing need for a remedy where prisoners crowded into cells and some had infectious diseases).) Plaintiff claims that the health care services department at Solano "are still using single cells for rotating positive inmates in and out of the same unsanitized cells and for isolation of some positive inmates who became positive as a result." (ECF No. 35 at 5.)

Plaintiff also appears to contend that his potential release from prison is supported by the Supreme Court's decision in Plata in which the high court "approved an order requiring the release of many convicted California prisoners unless the state quickly relieved long-standing prison overcrowding that, among other things, threatened the health of the inmates," and "if the government cannot remedy the Eighth Amendment violation, the court must accord a remedy, including release, where appropriate." (ECF No. 35 at 6.)

////

Plaintiff concedes he is serving a prison sentence as punishment, but argues such punishment does not include an aggravated risk of COVID-19 infection and illness, which includes the possibility of a resulting serious illness, lifelong complications or death.

### 3. Defendants' Reply

Initially, defendants object that plaintiff includes new allegations and arguments in his opposition, citing the Governor's March 2020 emergency declaration, and the CDCR's alleged failure to comply with guidance by the Center for Disease Control and Prevention, and appears to contend that Plata entitles plaintiff to release from prison. Defendants also object that plaintiff improperly provides exhibits not appended or discussed in plaintiff's amended complaint. Under Rule 12(b)(6), defendants contend court review is limited to the amended complaint. (ECF No. 36 at 2.) Further, defendants object that plaintiff fails to provide "necessary information" to support a request for judicial notice or a declaration authenticating such documents, citing Federal Rule of Evidence 201(c)(2), 901(a). (ECF No. 36 at 3.) In any event, plaintiff's new allegations and documents relate to general conditions across California prisons during the pandemic, and thus are not relevant, and that plaintiff's claim that unidentified "CDCR medical officials" have subjected plaintiff to allegedly improper conditions and failed to take reasonable steps to abate them, is improper because this case proceeds only against defendants Gates and Largoza. (ECF No. 36 at 4.) Moreover, defendants contend that Plata cannot support plaintiff's Eighth Amendment claims because Plata provides no substantive rights and does not "stand for the proposition that federal district courts can order state officials to release specific prisoners." (ECF No. 36 at 4, citing Lehto v. Brown, 2013 WL 12471668, at *3-4 (C.D. Cal. May 21, 2013) (internal citation omitted).)

Defendants point out that plaintiff only addressed defendants' argument concerning qualified immunity, and contend that his failure to address defendants' remaining arguments concedes defendants' points and warrants granting the motion to dismiss.

Finally, defendants argue that leave to amend would be futile, even to include plaintiff's new contentions, because such new issues are not relevant and do not undermine defendants' numerous grounds for dismissal.

D. <u>Discussion</u>

    1. <u>Review Limited to Amended Complaint</u>

Plaintiff provided over eighty pages of exhibits which were not attached to, or discussed in, plaintiff's amended complaint. (ECF No. 35 at 10-36; 35-1 at 1-68).

Federal Rule of Civil Procedure 12 provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

The Court declines to consider the two declarations proffered by plaintiff in support of his opposition, which do not bear file-stamps from the state superior court and recount matters outside the scope of plaintiff's amended complaint. The content of a declaration by an individual is not something that can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned and which is not subject to reasonable dispute. <u>See</u> Fed. R. Evid. 201(b)(2). Plaintiff also claims to incorporate such declarations by reference. A document may be incorporated by reference into a complaint, even if it is not physically attached to the complaint, if the plaintiff "refers extensively to the document or the document forms the basis of [his] claim." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) (citing <u>Van Buskirk v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002)). But plaintiff's amended complaint does not refer to such declarations and they do not form the basis of his claims against defendants Gates and Largoza.

In addition, the court declines to consider plaintiff's exhibits provided for the first time with plaintiff's opposition and not addressed in his amended complaint. "Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." <u>See</u> <u>Gerritsen v. Warner Bros. Entm't</u>, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015). Thus, the undersigned would be required to convert defendants' motion to dismiss into a motion for summary judgment in order to consider such exhibits, which include an apparent newspaper

article, filings and correspondence from other cases in federal court, and correspondence from the Prison Law Office concerning information about COVID-19 in CDCR, medical records and grievance-related forms for inmate Curtis Lee Morrison, correspondence between other individuals related to other litigation, and various inmate declarations prepared with the Morrison habeas case number M00132.  (ECF No. 35 at 15-36; 35-1.)  The undersigned declines to convert defendants' motion because the relevance of such documents to plaintiff's claims against defendants Gates and Largoza is unclear, some of the documents include facts subject to reasonable dispute, and most of the documents are not of unquestioned authenticity.  Accordingly, in deciding defendants' motion to dismiss, the undersigned disregards the two declarations and plaintiff's other exhibits.

### 2. Administrative Appeal No. SOL HC 20000398

As argued by defendants, plaintiff fails to address the specifics of defendants' arguments concerning plaintiff's claims against defendants Gates and Largoza, as pled in the amended complaint.  Moreover, plaintiff does not dispute that defendants' role in this case stemmed solely from their review of plaintiff's administrative appeals.  In addition, plaintiff clearly relies on each defendant's ruling on such appeal in the amended complaint.  Plaintiff previously appended a copy of such appeals to his initial letter to Judge Jon S. Tigar, who presides over Plata v. Newsom, No. 01-cv-1351 JLT (N.D. Cal.), which resulted in the opening of this action.  (ECF No. 1 at 8-23.)  Plaintiff also appended copies of COVID-19 test results.  (ECF No. 1 at 24-29.)  The undersigned finds that such administrative appeals and test results should be incorporated by reference in light of plaintiff's reliance on the defendants' rulings on such appeals and his allegations concerning COVID-19 raised in his amended complaint.  Ritchie, 342 F.3d at 907-08.

### 3. Requested Relief

The undersigned acknowledges that plaintiff sought early release from prison in administrative appeal No. SOL HC 20000398, and that in his amended complaint, plaintiff sought undesignated "extraordinary relief due to the imminent threat of COVID-19."  (ECF No. 18 at 7.)  Defendants contend that plaintiff's descriptions of his unsuccessful attempts to gain release through such appeals and his assertion that his continued confinement in CDCR custody poses a

substantial and unreasonable risk of harm violating the Eighth Amendment demonstrates that the extraordinary relief plaintiff seeks is release from prison. (ECF No. 32-1 at 9-10.) However, the undersigned did not construe plaintiff's complaint as seeking such relief because plaintiff was previously informed that he could not obtain release from prison in this action:

> Release from custody is not an available remedy for an Eighth Amendment violation. Preiser v. Rodriguez, 411 U.S. 475, 479 (1973) ("Release from custody is not an available remedy under the Civil Rights Act"). Rather, habeas is the "exclusive remedy" for inmates who seek "'immediate or speedier release'" from confinement. Skinner v. Switzer, 562 U.S. 521, 533-34 (2011) (quoting Wilkinson v. Dotson, 544 U.S. 74, 82 (2005)). Therefore, plaintiff's complaint must be dismissed so that plaintiff can identify appropriate relief.

(ECF No. 15 at 4.) Thus, it is clear that plaintiff may not obtain release from prison by this action. That said, plaintiff could seek money damages at trial. Rule 54(c) states that "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Therefore, whether or not plaintiff specifically sought money damages, he would be entitled to such damages if a jury found his constitutional rights were violated.

Along those same lines, if plaintiff is not entitled to punitive damages the jury would so decide. The Ninth Circuit has held that the decision to impose punitive damages is "within the exclusive province of the jury." Castro v. Cty. of Los Angeles, 797 F.3d 654, 670 (9th Cir. 2015)[2] (quoting Runge v. Lee, 441 F.2d 579, 584 (9th Cir. 1971). In this court, in prisoner civil rights cases such as the present case, the decision whether to award damages is ordinarily made by the jury at trial. Moreover, the undersigned is persuaded that "because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim." Zaiza v. Clark, 2021 WL 5853325, at *14-15 (E.D. Cal. Dec. 9, 2021) (collecting cases), adopted, 2022 WL 256474 (E.D. Cal. Jan. 27, 2022).

---

[2] The history of Castro is recited as follows: reh'g en banc granted, 809 F.3d 536 (9th Cir. 2015), and on reh'g en banc, 833 F.3d 1060 (9th Cir. 2016), cert. denied sub nom Los Angeles Cty., Cal. v. Castro, 137 S. Ct. 831 (Mem) (2017).

Therefore, defendants' motion to dismiss plaintiff's request for punitive damages should be denied.

                4.  Merits

Defendants argue that denying a grievance, standing alone, does not violate any constitutional right.  (ECF No. 32-1 at 12.)  However, "this is not the law where the appeal issue is medical and the reviewers are medically trained."  Coston v. Nangalama, 2013 WL 772485, at *6 (E.D. Cal. Feb. 28, 2013), report and recommendation adopted in part, rejected in part, 2013 WL 1331233 (E.D. Cal. Mar. 29, 2013).  Although the district court granted qualified immunity to the defendants who reviewed Coston's grievances, the district court agreed with the law regarding review of an administrative appeal by a medically trained reviewer as set forth in the findings and recommendations.  Id., 2013 WL 1331233 at *1.  In his findings, the magistrate judge relied on Judge Snow's description of the law on this issue:

> Prisoners have no Fourteenth Amendment liberty interest in a right to appeal adverse decisions by prison authorities.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").  In Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), the Ninth Circuit confirmed that a prisoner may not challenge an administrative disciplinary appeals process on Due Process grounds, confirming that "inmates lack a constitutional entitlement to a specific prison grievance procedure."  Id.
>
> The Ninth Circuit has not ruled on whether, in a prison that provides a grievance process, a prisoner may state a valid Eighth Amendment claim against an individual prison official who hears and denies an appeal in that process.  The district courts are divided on the question even within the Eastern District of California.  At least one decision in the Eastern District, relying on Ramirez and Mann, reasoned that no constitutional claim of any sort may be based upon the administrative appeals process.  In Martin v. Tilton, 2008 WL 4454045, at *5 (E.D. Cal. Sep. 30, 2008), the court dismissed an Eighth Amendment complaint predicated upon the fact that prison officials had denied a grievance, writing "to the extent [plaintiff] asserts that [defendants] are liable because they participated in the handling of his inmate grievances, he cannot state a claim upon which relief can be granted."  Id.
>
> Other district courts have disagreed, at least regarding Eighth Amendment complaints against medically-trained officers who deny appeals requesting specific care.  See, e.g., Coleman v. Adams, 2010 WL 2572534 (E.D. Cal. June 22, 2010); Arreola v. Dudley, 2010 WL 3033806 (E.D. Cal. July 30, 2010); Herrera v. Hall, 2010 WL 2791586 *4 (E.D. Cal. July 14, 2010).  Such courts generally

>reasoned that, although <u>Ramirez</u> and <u>Mann</u> prohibit Due Process claims regarding the handling of appeals, they "do not touch upon whether an appeal reviewer's actions can be considered 'cruel and unusual' within the meaning of the Eighth Amendment." <u>Coleman</u>, 2010 WL 2572534, at *7. In <u>Coleman</u>, the district court reasoned that the plaintiff's reference to his administrative appeal (in that case, for a request for a lower bunk and pain medication needed to treat previous injuries) "merely bolsters his allegation that supervisory personnel had actual awareness of the risk to Plaintiff's safety." <u>Id.</u>
>
>Of particular note are cases in which plaintiffs have filed administrative appeals requesting particular medical treatment for particular ailments. In <u>Arreola</u>, a patient who had been diagnosed with Hepatitis C was transferred to a new prison, and then was told by a prison doctor there that he did not have the disease. He filed an appeal, which the same doctor rejected; the court found that the doctor could be liable because "constitutional violations are not shielded from liability because they occur in part within the context of an administrative interview." <u>Arreola</u>, 2010 WL 3033806, at *4. In another Hepatitis C case, the district court found that an appeals reviewer who was medically trained but not the original treating physician could also be liable under the Eighth Amendment, so long as that reviewer "had the authority and opportunity to prevent the ongoing violation," because in such a case "a plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an impending violation and failed to prevent it." <u>Herrera</u>, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (citing <u>Taylor</u>, 880 F.2d at 1045). The emerging consensus, therefore, is that a medically-trained official who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the official knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment. See <u>Sevilla v. Terhune</u>, 2009 WL 1211393, at *6 (E.D. Cal, 2009) (plaintiff "will likely also be able to state a cognizable claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue").

<u>Pogue v. Igbinosa</u>, 2012 WL 603230, at *9-10 (E.D. Cal. Feb. 23, 2012) (finding that prisoner failed to demonstrate that non-medical reviewer was medically trained or authorized to order treatment).

Here, although it was submitted as a health care grievance, plaintiff was not seeking medical treatment. Rather, he was seeking early release from prison based on the risk that he would suffer serious illness if infected with COVID-19. Indeed, the grievance response provided by defendant Gates confirmed that plaintiff had been provided a COVID-19 risk score of 7, and that plaintiff would be notified if he was "determined to be eligible for release." (ECF No. 1 at 21.) The grievance responses by both defendants reflect that plaintiff continued to receive

medical treatment for his myriad medical issues. (ECF No. 1 at 18-19, 21.) Therefore, this case is distinguishable from those cases finding the prisoner was seeking particular medical treatment for which the reviewing medical professional failed to offer treatment. But even assuming, *arguendo*, that his request for release could be construed as medical treatment in the context of COVID-19, plaintiff fails to demonstrate that either defendant had the authority to grant plaintiff early release. Plaintiff does not argue otherwise.

In his opposition, plaintiff now contends that he was housed with inmates who had confirmed cases of COVID-19, rather than being housed with inmates only suspected of having been exposed to COVID-19, in violation of the guidelines established by the Center for Disease Control and Prevention. He claims unidentified CDCR medical officials demonstrated deliberate indifference to plaintiff's health and safety by subjecting him to such conditions and failing to take reasonable steps to abate them. But plaintiff fails to attribute such housing decisions to either defendant charged with reviewing his grievance. Indeed, in his grievance, plaintiff did not allege issues with his specific housing; rather, he generally complained about inadequate sanitation, watered-down disinfectant, no hand washing facilities, inadequate isolation and quarantine of symptomatic and exposed people, inadequate exclusion of symptomatic or exposed staff, and inadequate testing and reporting. (ECF No. 1 at 8.) Most of such issues, while related to public health matters, concern custody staff and unidentified prison staff responsible for making housing decisions, and would not fall under the purview of medical professionals tasked with reviewing health care appeals.

For all of the above reasons, the undersigned recommends that defendants' motion to dismiss the complaint be granted.

### 3. Qualified Immunity

In light of the above recommendation, the undersigned declines to address qualified immunity.

## IV. Leave to Amend?

The undersigned has considered whether plaintiff should be granted leave to amend. Fed. R. Civ. P. 15(a). In the instant action, plaintiff has filed two pleadings. His original complaint

failed to allege sufficient facts to state an Eighth Amendment deliberate indifference claim, and expressly sought release from prison. (ECF No. 15.) His amended complaint failed to include charging allegations as to one defendant and failed to state a claim as to a second defendant. (ECF No. 19.) And, as set forth above, plaintiff's amended complaint also fails to state cognizable claims against the remaining two defendants. It is futile to grant plaintiff leave to amend as to defendants Gates and Largoza because plaintiff cannot state a cognizable Eighth Amendment claim against them based solely on their roles in denying plaintiff's grievances, and plaintiff alleges no other facts supporting an Eighth Amendment claim against them.

Moreover, while plaintiff did not expressly seek release from prison in his operative pleading, it appears that plaintiff continues to seek early release from prison. But, as noted in the court's prior order, plaintiff cannot seek release from prison through a civil rights action. Rather, plaintiff must file a petition for writ of habeas corpus under 28 U.S.C. § 2254. The undersigned declines to construe this action as seeking such relief because plaintiff has not named the appropriate party, and it is unclear whether plaintiff first exhausted his state court remedies to pursue habeas relief. The Clerk of the Court is directed to send plaintiff the habeas petition form.

In addition, as argued by defendants, "Plata's remedial decree to reduce prison populations does not create a substantive right for purposes of a civil rights action." Lehto v. Brown, 2013 WL 12471668, at *3. It would be inappropriate to grant plaintiff leave to amend on that basis.

Finally, even considering plaintiff's new allegation that he was housed with inmates who had confirmed cases of COVID-19, rather than being housed with inmates only suspected of having been exposed to COVID-19, he fails to include facts suggesting that any "CDCR medical official" was responsible for such housing, or that a particular individual with such responsibility was deliberately indifferent to a substantial risk of harm to plaintiff by transferring him in this manner. In addition, he fails to set forth facts demonstrating that he became infected with COVID-19 as a result of such housing rather than as a result of being previously exposed to

////

////

16

COVID-19. Plaintiff's new allegation, standing alone, is insufficient to demonstrate he could amend his pleading to state a cognizable civil rights claim.[3]

For all of the above reasons, the undersigned recommends plaintiff not be granted leave to amend in this action. Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003) ("The district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint."), overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007) (*en banc*).

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for judicial notice (ECF No. 35) is denied; and

2. The Clerk of the Court is directed to assign a district judge to this case, and to send plaintiff the form for filing a petition for writ of habeas corpus.

Further, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 32) be partially granted; and

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, petitioner any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

////

---

[3] In addition, given plaintiff's focus on "medical professionals" and the "health care services department," it is does not appear likely that plaintiff exhausted any claim challenging the person responsible for housing plaintiff in this manner. Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). Plaintiff did not challenge this specific housing decision in grievance No. SOL HC 20000398. (ECF No. 1 at 8.)

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 6, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/john0580.mtd.12b6