UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIS E. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN KUERSTEN,[1]<br><br>　　　　Defendant. | No. 2:21-cv-0828 KJM CSK P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Defendant Dr. Martin Kuersten's fully briefed motion to dismiss the third amended complaint is before the Court. As discussed below, defendant's motion to dismiss should be granted.

I.    BACKGROUND

On March 23, 2021, plaintiff's letter claiming he was being denied release in violation of a court order was filed in the Northern District of California. (ECF No. 1.) On April 23, 2021, plaintiff filed a civil rights complaint seeking release from prison. (ECF No. 8.) On May 5, 2021, the action was transferred to the Eastern District of California. (ECF No. 11.) On June 25,

---

[1] Defendants CDCR and Director of Medical Services were dismissed without prejudice at plaintiff's election. (ECF Nos. 53, 54.) The Clerk of the Court is directed to change the case name to the caption set forth herein.

1

2021, plaintiff's complaint was dismissed with leave to amend. (ECF No. 15.)

On July 15, 2021, plaintiff filed a first amended complaint ("FAC"). (ECF No. 18.) On October 7, 2021, the court found that the FAC stated potentially cognizable claims against defendants Gates and Largoza but failed to state claims against defendants Allison and Kelso. (ECF No. 19.) Plaintiff was granted leave to amend, but plaintiff opted to dismiss defendants Allison and Kelso and proceed solely as to defendants Gates and Largoza. (ECF No. 20.) Subsequently, defendants Gates and Largoza filed a motion to dismiss, and on May 6, 2022, the previously assigned magistrate judge recommended that the motion to dismiss be partially granted, and the action be dismissed with prejudice. (ECF Nos. 32, 38.)

On January 17, 2023, the district court partially granted prior defendants' motion to dismiss but based on new allegations raised in his objections to the findings and recommendations, granted plaintiff leave to file a second amended complaint "to state claims against defendants responsible for subjecting plaintiff to unsafe conditions of confinement in light of his medical conditions, age, and the increased risks posed by COVID-19." (ECF No. 41 at 3.) The district court found that the law is clearly established that prisoners have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases such as COVID-19, which is highly contagious. (ECF No. 41 at 4.) The district court also agreed with another district court's finding on when a prison inmate states an Eighth Amendment claim in this context:

> Based on the foregoing, the Court finds that a prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner can sufficiently allege that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks. The Court also finds that the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and that this clearly established right extends to protection from COVID-19.

(ECF No. 41 at 5 (quoting Jones v. Sherman, 2022 WL 4238875, at *10 (E.D. Cal Sept. 14, 2022).) The district court found that plaintiff made "sufficient assertions in the record to conclude that he may be able to allege cognizable claims against one or more defendants." (ECF No. 41 at 5.) Plaintiff's FAC was therefore dismissed with leave to amend. (Id.)

2

On March 7, 2023, plaintiff filed a second amended complaint ("SAC") naming only Dr. Kuersten as a defendant. (ECF No. 44.) On July 25, 2023, plaintiff's SAC was dismissed with leave to amend. (ECF No. 48.) On September 20, 2023, after being granted an extension of time, plaintiff filed his third amended complaint ("TAC"). (ECF No. 51.)

On April 25, 2024, defendant filed a motion to dismiss the TAC; plaintiff filed an opposition on June 24, 2024, and defendant filed a reply on July 8, 2024. (ECF Nos. 64, 66, 67.)

II.   PLAINTIFF'S THIRD AMENDED COMPLAINT

In his TAC, plaintiff alleges that defendant Dr. Martin Kuersten, Chief Medical Executive at California State Prison, Solano (CSP-SOL), "ordered plaintiff to move to a so-called quarantine building because of plaintiff's high risk patient status," despite knowing that at that time in 2021, COVID-19 outbreaks were "more concentrated in the 'A' and 'B' Facilities." (ECF No. 51 at 3.) Plaintiff contends that defendant Kuersten knew or should have reasonably known that rehousing plaintiff into that building would increase the likelihood of exposure to COVID-19 and resulted in plaintiff becoming infected with COVID-19. Plaintiff then had to be moved into "B" facility with other inmates who were infected with COVID-19. Plaintiff alleges that defendant Kuersten acted unreasonably when doctors, public health officials and the National Center for Disease Control and Prevention ("CDC") earlier "sounded the alarm that prisons and jails could become the Epicenter of the (COVID-19) Pandemic." (Id. at 3 (internal quotation marks omitted).)

Plaintiff contends his pre-existing health conditions made him vulnerable to COVID-19: lupus, right knee pain, left knee pain and swelling, osteoarthritis, low back pain, chronic headaches, Prurigo Nodularis,[2] and chronic obstructive pulmonary disease ("COPD"), which makes it hard for air to get in and out of plaintiff's lungs. (Id. at 4.) Plaintiff maintains that he continues to experience COVID-19 symptoms such as loss of smell and taste, shortness of breath, especially during physical activity, long-term cough with thick mucus, and fatigue. (Id. at 3-4.) Plaintiff states that he may require lung surgery. (Id. at 4.)

---

[2] Plaintiff does not define prurigo nodularis. According to Yale Medicine, "[p]rurigo nodularis is a chronic skin disorder characterized by the presence of hard, extremely itchy bumps known as nodules." "Prurigo Nodularis," Yale Medicine, https://www.yalemedicine.org/conditions/prurigo-nodularis-overview (last visited Dec. 16, 2024).

Plaintiff seeks money damages.

### III. DEFENDANT'S MOTION TO DISMISS

#### A. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Bell Atlantic Corp., 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotes and citation omitted), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). Otherwise, the motion is treated as one for summary judgment. Lee, 250 F.3d at 688. There are exceptions for material which is properly submitted as part of the complaint and "matters of public record" which may be judicially noticed. Id. at 688-89. "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." Id. at 688 (quoting Parrino v. FHD, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998)).

A motion to dismiss for failure to state a claim should not be granted unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe pro se pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

B.   The Civil Rights Act

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

C.   The Eighth Amendment

Prison conditions violate the Eighth Amendment if they are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Prison officials may not deprive prisoners of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted). The Eighth Amendment "requires that inmates be furnished

with the basic human needs, one of which is reasonable safety." Helling v. McKinney, 509 U.S. 25, 33 (1993) (citation and internal quotations omitted). In a "failure-to-protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was subjectively, deliberately indifferent to the inmate's health or safety. Farmer, 511 U.S. at 834; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

In order to state an Eighth Amendment claim, a plaintiff must allege that prison officials' conduct was sufficiently harmful (the "objective" prong), and that the officials acted with a sufficiently culpable state of mind (the "subjective" prong). See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001). Objectively, the plaintiff must allege facts showing that the deprivation was sufficiently serious, as determined by the conditions alleged. See Farmer, 511 U.S. at 834. The plaintiff must allege conditions so serious as to be outside the bounds of those which "today's society chooses to tolerate." Helling, 509 U.S. at 36.

The subjective prong requires "more than ordinary lack of due care for the prisoner's interest or safety." Farmer, 511 U.S. at 835 (quotation omitted). "[D]eliberate indifference" is the minimum showing of culpability necessary to state a claim. See id. at 834; Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be liable for "deliberate indifference," a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838. A prison official may be liable for an Eighth Amendment violation if the plaintiff plausibly alleges that such official, acting with "deliberate indifference," caused actionable harm. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc) (distinguishing Eighth Amendment and Fourteenth Amendment deliberate indifference standards); Iqbal, 556 U.S. at 678. "Direct causation by affirmative action is not necessary: 'a prison official may be held liable under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it*.'" Castro, 833

6

F.3d at 1067 (quoting Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009) (emphasis in original)) (ellipsis omitted).

Prison officials have a constitutional obligation to protect inmates from serious communicable diseases. See Helling, 509 U.S. at 33; Fuller v. Houston, 2021 WL 6496742, at *3 (C.D. Cal. Nov. 19, 2021), report and recommendations adopted, 2022 WL 225671 (C.D. Cal. Jan. 25, 2022); Maney v. Brown, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment). "[A] prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner can sufficiently allege that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks." Jones v. Sherman, 2022 WL 4238875, at *10.

D.  The Parties' Positions

1.  Defendant's Motion

In his motion, defendant Kuersten argues the following. Plaintiff's facts are insufficient to demonstrate that defendant was deliberately indifferent to a risk of harm to plaintiff. (ECF No. 64 at 8.) Rather, plaintiff's allegations show that prison staff, including defendant Kuersten, were attempting to address the COVID-19 pandemic and the alleged housing decisions were part of those efforts, and such efforts undercut a finding of deliberate indifference. (Id. at 8-9.) Even if those housing decisions put plaintiff at risk of COVID-19, plaintiff provides no facts showing that "those decisions created a risk where none had existed, or that would not have arisen anyway." (Id. at 9.) Defendant points out that although plaintiff alleges defendant "knew there were further outbreaks" of COVID-19 in facilities A and B, plaintiff does not allege that defendant knew plaintiff was transferred to one of those potentially more dangerous housing units. (Id.)

Further, defendant contends that plaintiff fails to allege facts showing that defendant knew of any risk to plaintiff at the time he made the decision that allegedly harmed plaintiff. Instead, plaintiff's allegations as to defendant's knowledge only relate to general prison conditions, failing to show defendant's subjective awareness of an excessive risk to plaintiff's health. While plaintiff states it made no sense to subject a high-risk inmate to the risk of contracting COVID-19,

7

the TAC fails to establish defendant Kuersten's knowledge of such risks or his knowledge that plaintiff personally was at risk. (Id. at 10.) Defendant argues that plaintiff's allegations that defendant "knew or should have reasonably known that moving/rehousing plaintiff into such environment/housing would increase the likelihood of exposure," is insufficient to show defendant was deliberately indifferent to a risk specific to plaintiff relating to COVID-19. (Id.) Finally, defendant argues that plaintiff's passing comment concerning the "sounding of the alarm" fails to identify any specific guidance for prison officials or that defendant failed to follow any specific guideline. (Id. at 11.) Defendant contends that even if plaintiff had set forth such CDC guidelines, the failure to follow CDC guidelines does not constitute a Constitutional violation. (Id.)

In the alternative, defendant argues he is entitled to qualified immunity. Defendant disagrees with the district court's earlier holding on prior defendants' motion to dismiss that the law in this context is clearly established. (Id. at 11-12.) Defendant contends Hines v. Youseff, 914 F.3d 1218, 1229-30 (9th Cir. 2019), is an analogous case brought against prison officials by inmates who contracted Valley Fever. (Id. at 12.) Defendant argues that in Hines, "the Ninth Circuit found that "the specific right that the inmates claim—'the right to be free from heightened exposure to Valley Fever spores'—was not clearly established." (Id.) Similarly, defendant contends there is no clearly established law holding that some abstract increase in risk of exposure to COVID-19 in prison violated the Constitution in 2021, early in the pandemic, and developing law suggests otherwise. (Id. at 13.) Defendant points to Plata v. Newsom, 445 F. Supp. 3d 557 (N.D. Cal. Apr. 17, 2020), where the court held plaintiffs failed to show the state's response to the pandemic was so deficient as to violate the Eighth Amendment where various measures were undertaken even though the measures did not fully prevent the spread of COVID-19. (Id.) Defendant also cites out-of-circuit authority for his view that a heightened risk of COVID-19 in the prison setting was not inherently unconstitutional. (Id. (collecting cases).) Accordingly, defendant contends it was not clearly established that plaintiff had a right to be free from an "unquantifiable increase in risk of exposure to COVID-19 in prison," or that "changing inmates' housing assignments—especially when done in an effort to combat the virus's spread—

8

would violate the Eighth Amendment." (Id. at 14.)

### 2. Plaintiff's Opposition

In his opposition, plaintiff raises new factual allegations not pled in the TAC. Plaintiff was previously informed that he cannot add new material in his opposition because the focus of a motion to dismiss under Rule 12(b)(6) is the operative complaint. (ECF No. 38 at 10.) For example, plaintiff raises a new factual allegation not pled in the TAC that defendant was "a member of the incident command post" and "help[ed] design COVID-19 mitigation efforts." (ECF No. 66 at 1.) As addressed below, even if the Court were able to consider new factual allegations raised in plaintiff's opposition that were not pled in the TAC, these new factual allegations would not save the TAC from dismissal. In addition, plaintiff relies on statements allegedly made by defendant Kuersten, re-typed in a question and answer format, apparently from a transcript from an unidentified court proceeding. (ECF No. 66 at 1-4.)

Plaintiff claims Dr. Kuersten subsequently decided to give patients the option to move or stay in their housing units if inmates participated in the testing protocols, and plaintiff contends "that decision was made a little to[o] late for plaintiff and others similarly situated." (Id. at 4.)

### 3. Defendant's Reply

In reply, defendant points out that in the opposition, plaintiff failed to address defendant's arguments that plaintiff did not allege sufficient facts demonstrating that defendant was deliberately indifferent to a risk of harm particular to plaintiff relating to COVID-19, or that defendant is entitled to qualified immunity. (ECF No. 67.) Defendant argues that plaintiff's failures concede the validity of defendant's motion and support dismissal of this action. (Id. at 1-2 (citing Shull v. Ocwen Loan Servicing, LLC, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014).) Further, defendant contends that plaintiff's inclusion of new material in his opposition is improper and cannot serve to defeat defendant's motion. (Id. (citing ECF No. 38 at 10-11; Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).).

In any event, defendant counters that none of the new material relied upon by plaintiff demonstrates that defendant knowingly disregarded a risk of harm specific to plaintiff; rather, plaintiff simply alleges that defendant was aware of "the presence of COVID-19 in the prison

1  generally." (ECF No. 67 at 2.) Defendant argues that plaintiff's reliance on defendant's
2  statements that he was "a member of the incident command post" and "help[ed] design COVID-
3  19 mitigation efforts" is unavailing because it shows defendant "was not responsible for any risk
4  that was not present before." (Id.) Further, such statements show they were combatting the
5  virus's spread, and even if their efforts were not completely successful, it does not demonstrate a
6  constitutional violation. (Id. at 3.) Also, as a member of the response team, defendant contends
7  he cannot be held responsible for any consequences of the team's decisions and actions because
8  "group liability is an improper . . . ground for liability." (Id. (quoting Fletcher v. Quin, 2017 WL
9  836194, at *4 (S.D. Cal. Mar. 3, 2017).) Defendant points out that the team as a whole appeared
10 to lack "sufficient authority to be held liable, as it was subject to multiple levels of oversight,
11 including a federal receiver and a district court." (Id. (citing ECF No. 66 at 1-3), and noting
12 plaintiff seems to refer to the continuing oversight of CCHCS operations pursuant to Plata v.
13 Newsom, No. 4:01-cv-01351-JST (N.D. Cal. filed Apr. 5, 2001).) Further, defendant points to
14 plaintiff's alleged quotes showing that the prison's efforts were stymied by the inmate population,
15 who gave "a lot of push-back" against a quarantine policy and argues that where third parties
16 caused the alleged increased risks from COVID-19, plaintiff cannot state a claim. (Id. (quoting
17 ECF No. 66 at 4).)

18    Finally, defendant points to plaintiff's sole reference to defendant's individual actions,
19 that prisoners were moved between housing facilities despite having COVID-19 outbreaks and
20 that defendant's alleged decision to modify housing-transfer plans "was made a little [too] late for
21 plaintiff and others similarly situated." (Id. at 4 (quoting ECF No. 66 at 4).) Defendant argues
22 that such statement does not demonstrate defendant had knowledge of a risk of harm particular to
23 plaintiff and suggests defendant erred or was slow to respond, which does not state a claim under
24 the Eighth Amendment. (Id.)

25        No Leave to Amend

26    Defendant argues that plaintiff should not be granted leave to amend because he has
27 amended his complaint several times but failed to state a cognizable Eighth Amendment claim
28 and his opposition fails to suggest any additional facts plaintiff could provide that would state a

viable Eighth Amendment claim.  (Id.)

E.     Discussion

Initially, the Court declines to grant the motion to dismiss based solely on plaintiff's failure to address defendant's arguments.  Unlike the opposing party in Shull, 2014 WL 1404877, who was represented by counsel, plaintiff is proceeding pro se.  Pro se litigants are afforded more leniency than those represented by counsel and are to be given opportunities to correct their procedural mistakes.  See Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986) (explaining that "in evaluating [pro se plaintiff's] compliance with the technical rules of civil procedure, we treat him with great leniency"); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) ("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants." (citation omitted)).

Similarly, defendants are correct that plaintiff may not add new material in his opposition in an effort to defeat defendant's motion to dismiss.  Schneider, 151 F.3d at 1197 n.1 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."  Citation omitted.)  Instead, the sole focus is the operative pleading.  Id.

As to the risks posed by COVID-19, "no one questions that [COVID-19] poses a substantial risk of serious harm to [prisoners]."  Plata v. Newsom, 445 F. Supp. 3d at 559; see also Martinez v. Sherman, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) ("It is clear that COVID-19 poses a substantial risk of serious harm.") (citations omitted); Fuller, 2021 WL 6496742, at *4 ("There is absolutely no question that COVID-19 is a serious communicable disease.") (citations omitted).  Thus, the objective prong of Farmer is met.

As to the subjective prong, the Court finds that despite being granted leave to amend, plaintiff has again failed to set forth specific facts demonstrating that defendant Dr. Kuersten knew plaintiff was considered high-risk medical yet ordered plaintiff to be transferred to a quarantine building Dr. Kuersten knew at that time contained inmates with a higher concentration of COVID-19 infections.  Plaintiff claims that defendant Dr. Kuersten:

> ordered plaintiff to move to a so-called quarantine building because of plaintiff's high risk patient status.  Co-Incidentally, in that same year and time 2021, Dr. Kuersten knew there were further outbreaks

11

of . . . COVID-19 that were actually concentrated in the "A" and "B" facilities.

(ECF No. 51 at 3.)  Plaintiff's general allegation that defendant Dr. Kuersten "knew there were further outbreaks of . . . COVID-19 that were actually more concentrated in the "A" and "B" facilities (ECF No. 51 at 3), does not establish defendant's knowledge of a personal risk of COVID-19 to plaintiff specifically, or at the time plaintiff was ordered to be moved from dorm housing.  See Farmer, 511 U.S. at 837; see also Tran v. Tampkins, 2023 WL 6850038, at *4 (C.D. Cal. Sept. 1, 2023) (finding the amended complaint failed to satisfy subjective prong because plaintiff failed to demonstrate a causal connection between defendants' alleged conduct and plaintiff's alleged injury).  Indeed, plaintiff generally argues that "in that same year and time" defendant was aware of such outbreaks, but such general assertion does not make clear that defendant was aware of a heightened threat to plaintiff at the time plaintiff was ordered to move from dorm housing into celled housing in a quarantine building.  Plaintiff's vague allegation does not make clear when plaintiff was ordered to move to celled housing in the quarantine building, when in 2021 the further outbreaks became more concentrated in A and B Facilities, or when in 2021 Dr. Kuersten became aware of such concentrated outbreaks.

Further, "[w]hen examining whether a prison official subjectively acted with deliberate indifference to the risk of COVID-19, the key inquiry is not whether the official perfectly responded, complied with every CDC guideline, or whether his efforts ultimately averted the risk."  Greer v. Caravajal, 2022 WL 4826513, at *9 (C.D. Cal. June 30, 2022), adopted 2022 WL 4842927 (C.D. Cal. Sept. 30, 2022); Benitez v. Sierra Conservation Ctr., Warden, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); see also Plata v. Newsom, 445 F. Supp. 3d at 564 ("The question is whether [p]laintiffs have demonstrated that [d]efendants' response to the COVID-19 epidemic is unreasonable.").  A prison official responds reasonably to the risk when he has "not disregarded a known risk or failed to take any steps to address the risk," even if the prison's response has been inadequate.  Benitez, 2021 WL 4077960, at *6.  Here, plaintiff does not contend that Dr. Kuersten failed to take any steps to address a known risk, but rather appears to believe that Dr. Kuersten should not have ordered that plaintiff be moved.  Plaintiff alleges that

12

Dr. Kuersten "knew or should have reasonably known" that changing plaintiff's housing "would increase the likelihood of exposure." (ECF No. 51 at 3.) But a prison official is deliberately indifferent to an inmate's safety in violation of the Eighth Amendment if he knows that the prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. While the risks of COVID-19 are generally obvious, plaintiff includes no specific facts demonstrating that defendant knew that moving plaintiff from a dorm setting to celled housing in a quarantine building would subject plaintiff to a heightened risk of contracting COVID-19. Plaintiff provided no specific facts as to his new housing in a quarantine building that would put defendant on notice that a heightened risk existed, other than to claim that at some point in 2021, there were concentrated outbreaks of COVID-19 in A and B Facilities. Plaintiff does not allege where in CSP-SOL he was previously housed in the dorm setting, or its proximity to Facilities A and B, or how the housing in the quarantine building increased the likelihood of his exposure to COVID-19.

Plaintiff's allegations in the TAC are too conclusory to demonstrate Dr. Kuersten's personal knowledge that he was exposing plaintiff to a heightened risk of contracting COVID-19 when plaintiff was ordered to move to celled housing from the dorm setting. See Tran, 2023 WL 6850038, at *6-8 (where defendants authorized a dorm conversion, prisoner's allegations that "defendants failed to take adequate steps to control the spread of COVID-19 despite knowing the risks the virus posed are insufficient to state a deliberate indifference claim.") The Court recommends that defendant's motion to dismiss be granted.

With regard to the new material plaintiff provided in his opposition, plaintiff has again failed to identify the source of the alleged testimony by defendant set forth by plaintiff. (ECF No. 66 at 1-4.) In his second amended complaint ("SAC"), plaintiff alleged that defendant testified during an evidentiary hearing in the Superior Court of Solano County, and quoted some of the same passages he cites in the TAC. (ECF No. 44 at 3-5.) In the prior court's order screening the SAC, plaintiff was informed that he failed to identify when or in what court case Dr. Kuersten testified. (ECF No. 48 at 5.) Moreover, as argued by defendant, and as plaintiff was previously informed (ECF No. 38 at 10), plaintiff cannot add new material in his opposition because the

focus of a motion to dismiss under Rule 12(b)(6) is the operative complaint, which is the TAC.

But even if the Court considered the new material of defendant's alleged testimony as recounted in plaintiff's opposition, such testimony does not support a finding of defendant's subjective knowledge. Rather, the testimony attributed to Dr. Kuersten demonstrates such transfers were used to put inmates in celled housing rather than dorm housing, and "the goal at that time was to have high-risk individuals be in a presumably safer setting by having them outside their dorm buildings." (ECF No. 66 at 2.) Given the close proximity of inmates housed in a dorm setting, Dr. Kuersten's alleged testimony suggests the team was attempting to mitigate the risk of COVID-19, not put inmates at increased risk of contracting the virus. A prison official responds reasonably to the risk when he has "not disregarded a known risk or failed to take any steps to address the risk," even if the prison's response has been inadequate. Benitez, 2021 WL 4077960, at *6. Here, according to the alleged testimony presented by plaintiff, rather than disregarding the risk of COVID-19, Dr. Kuersten was attempting to mitigate the risk by housing plaintiff in a quarantine building with cell housing rather than a dorm setting.[3] Further, the allegation that defendant subsequently reconsidered moving inmates between housing facilities despite having COVID-19 outbreaks, in part because inmates objected to being moved because of other considerations, e.g., loss of property and access to programming, does not demonstrate defendant's deliberate indifference in initially ordering plaintiff's move.

F.   Qualified Immunity

1.   Legal Standards

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity shields an officer from liability even if his or her action resulted from "a mistake of law, a

---

[3] While the alleged testimony indicates that Dr. Kuersten was a member of the incident command post that met to implement COVID-19 protocols, and no other members of the team are named as a defendant, plaintiff's TAC identifies Dr. Kuersten and Does 1 through 10 as the individuals who ordered plaintiff moved to cell housing. (ECF No. 51 at 3.)

14

1 mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citation omitted).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would [have understood] that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

2.  Discussion

Defendant also moves for qualified immunity on the grounds that the TAC fails to establish an Eighth Amendment violation and argues that there was no clearly established law holding that COVID-19 related risks would make prison conditions unconstitutional during the relevant time. (ECF No. 64 at 12.) Plaintiff did not address the issue of qualified immunity in his opposition. However, because the Court found plaintiff failed to state an Eighth Amendment claim, "there is no necessity for further inquiries concerning qualified immunity." See Saucier, 533 U.S. at 201. Thus, the Court declines to address the issue of qualified immunity.

IV.  LEAVE TO AMEND

This Court has considered whether the TAC should be dismissed with leave to amend. Once the court has already granted a plaintiff leave to amend a complaint, the court's discretion in determining whether to allow additional opportunities to amend is particularly broad. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) (quoting Miller v. Yokohama Tire Corp., 358 F.3d 616,622 (9th Cir. 2004)); Chodos v. West Publishing Co., 292 F.3d 992, 1003 (9th Cir. 2002).

In this case, plaintiff has filed four pleadings. His original complaint (ECF No. 8) failed to allege sufficient facts to state an Eighth Amendment deliberate indifference claim, and

expressly sought release from prison, a remedy unavailable under 42 U.S.C. § 1983. (ECF No. 15.) He then filed a first amended complaint (ECF No. 18), which failed to include charging allegations as to defendant Allison and failed to state a claim as to defendant Kelso; defendants Kelso and Allison were dismissed at plaintiff's election. (ECF Nos. 19-21.) Subsequently, the motion to dismiss filed by defendants Gates and Largoza was granted. (ECF Nos. 38, 41.) However, on January 17, 2023, the district court granted plaintiff leave to amend to "state claims against defendants responsible for subjecting plaintiff to unsafe conditions of confinement in light of his medical conditions, age, and the increased risks posed by COVID-19." (ECF No. 41 at 3.) Plaintiff then filed a second amended complaint, which was dismissed as vague and conclusory, noting plaintiff did not include any factual allegations demonstrating Dr. Kuersten was aware that medical staff at CSP-SOL violated policy by moving plaintiff from Facility C to Facility B, and that even assuming Dr. Kuersten knew Facility B was having increased outbreaks of COVID-19, such knowledge did not demonstrate Dr. Kuersten was personally involved in ordering plaintiff's transfer. (ECF No. 48 at 4-5.) Plaintiff then filed a fourth pleading, his third amended complaint. As discussed above, this Court recommends that plaintiff's TAC should be dismissed.

Plaintiff has been provided multiple opportunities to file a cognizable civil rights complaint yet has failed to do so. Plaintiff was previously notified of the pleading deficiencies yet failed to correct them. A plaintiff's "repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 10088 (9th Cir. 2009) (internal citations marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations—none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir.

1997) (denial of leave to amend appropriate where further amendment would be futile). Plaintiff has demonstrated that he is unable to set forth sufficient facts to constitute a cognizable civil rights claim as to a culpable defendant, and it appears that another amendment will not cure the defects identified in his TAC. For these reasons, the Court declines to recommend that plaintiff be given further leave to amend. Sateriale, 697 F.3d 777 at 794; Chodos, 292 F.3d at 1003.

V. CONCLUSION

For the above reasons, IT IS RECOMMENDED that:

1. Defendant's motion to dismiss the third amended complaint (ECF No. 64) be granted, and plaintiff's claims against defendant be dismissed.

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 21, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/john0828.mtd.csk

17